UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LINCOLN MEMORIAL ACADEMY;
EDDIE HUNDLEY; MELVIA SCOTT;
JAUANA PHILLIPS; KATRINA ROSS;
and ANGELLA ENRISMA,

      **Plaintiffs,**

v.                            **Case No. 8:20-cv-309-CEH-AAS**

STATE OF FLORIDA, DEPARTMENT
OF EDUCATION; SCHOOL BOARD OF
MANATEE COUNTY, FLORIDA; and
THE CITY OF PALMETTO

      **Defendants.**
_____/

## REPORT AND RECOMMENDATION

Plaintiffs Lincoln Memorial Academy (LMA) and Eddie Hundley (collectively, the plaintiffs) move for a preliminary injunction against Defendant School Board of Manatee County, Florida (School Board). (Doc. 178). The School Board opposes the motion. (Doc. 198). It is **RECOMMENDED** the motion be **DENIED**.

## I.    BACKGROUND

On July 23, 2019, the School Board held a regularly scheduled meeting. (Doc. 108, p. 23, ¶ 40). At the meeting, school board members reviewed over 500 pages of documents evidencing concerns about Mr. Hundley's presence on

1

LMA's campus and LMA's financial condition.[1] (Doc. 198, Ex. A, pp. 142-43). Based on the information presented at the meeting, the School Board voted to immediately terminate LMA's charter contract under Section 1002.33(8)(c), Fla. Stat. (Doc. 108, p. 23, ¶ 40).

The next day, the School Board issued a Notice of Immediate Termination, listing the issues that posed an immediate and serious danger to LMA students' health, safety, and welfare. (Doc. 198, Ex. A, pp. 147-48). The School Board later amended the notice to include these added issues:

> 1) A water "Shut-Off Notification" dated July 22, 2019, due to the inability to pay the utility bill; 2) Failure to make required contributions to the Florida Retirement System ("FRS"), despite withholding those contributions from employees' paychecks; 3) Failure to pay teachers their earned Best and Brightest awards from the state; 4) Failure to properly pay employees; 5) Failure to timely pay the Internal Revenue Service ("IRS"), despite withholding taxes from employees' paychecks; 6) Having a negative fund balance and being unable to meet the financial obligations required to run the school; 7) Termination of contracts with its food and dairy supplier due to failure to pay invoices; 8) Failure to properly screen food for allergens before serving it to the students; 9) Failure to maintain required records for the National Food Service Program ("NFSP"), placing LMA at risk of losing its funding to provide food to its students, who were all dependent upon that food; and 10) Failure to maintain student insurance for

---

[1] On May 13, 2019, the Commissioner of Education revoked Mr. Hundley's educator's certificate for five years under Section 1012.795(1), Fla. Stat., because he gave a positive reference in his official capacity in support of a former employee under investigation for having an inappropriate relationship with a minor. (Doc. 108, pp. 91, 98). Even after his educator's certificate was revoked, Mr. Hundley remained present at LMA.

2

student athletes.

*See Manatee Cnty. Sch. Bd., v. Lincoln Mem'l Acad., Inc.*, No. 19-4155, 2019 WL 4894993, at \*2 (Fla. DOAH Sep. 27, 2019).

LMA appealed the School Board's termination of the charter contract and Robert S. Cohen, Administrative Law Judge of the Florida Division of Administrative Hearings (DOAH), held a four-day evidentiary hearing. *Id.* at \*3. Judge Cohen issued a 95-page order denying LMA's appeal and upholding the School Board's termination of the charter contract. *Id.* at \*38. Judge Cohen concluded that the School Board proved violations of law and other good cause to immediately terminate the charter contract by clear and convincing evidence. *Id.* at \*16-21. In addition, Judge Cohen concluded that LMA failed to prove its defenses, including its defense that the School Board caused LMA's financial problems. *Id.* at \*21-27.

The plaintiffs appealed the DOAH decision. *See Lincoln Mem'l Acad., Inc. v. Manatee Cty. Sch. Bd.*, No. 1D19-3859, 2020 WL 7766933 (Fla. 1st DCA Dec. 30, 2020). Florida's First District Court of Appeal affirmed the DOAH decision and upheld the School Board's termination of the charter contract. *Id.* The First District Court of Appeal concluded LMA "failed to demonstrate any reason to reverse the [DOAH] final order" and "the evidence fully support[ed]

3

the result." *Id.* at *5. LMA did not appeal the First District Court of Appeal's decision.

On February 11, 2020, the plaintiffs sued the State of Florida, Department of Education, the School Board, and the City of Palmetto on behalf of themselves and former employees and parents of students. (Doc. 1). On March 9, 2020, the plaintiffs amended their complaint. (Doc. 6). The court dismissed the plaintiffs' amended complaint as an improper shotgun pleading and granted the plaintiffs "one—and only one—opportunity to cure the shotgun pleading deficiencies." (Doc. 96, p. 6).

The plaintiffs filed a second amended complaint. (Doc. 108). The second amended complaint raises various contract and tort claims and claims under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964. (*Id.*). The School Board again moved to dismiss the plaintiffs' second amended complaint as a shotgun pleading, and that motion is pending.[2] (Doc. 118).

The plaintiffs now request a preliminary injunction to "preserve the status quo" by requiring the School Board to continue assuming operation of LMA as a charter school for the pendency of this action. (Doc. 178, pp. 6-7). The School Board opposes the motion and argues a preliminary injunctive order is

---

[2] Also pending is the plaintiffs' motion to file a third amended complaint. (Doc. 159).

4

unwarranted and inappropriate under these circumstances. (Doc. 198).

## II.   ANALYSIS

Because preliminary injunctions regulate *future* conduct, a party only has standing to request preliminary injunctive relief "if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury." *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) (emphasis in original). The plaintiffs' request for a preliminary injunction does not state a real and immediate threat of future injury. Rather, the stated harm stems from a past event—termination of LMA's charter contract. The DOAH and the First District Court of Appeal both upheld the School Board's decision to terminate LMA's charter contract. The court cannot protect the plaintiffs against future injury because the charter contract is already terminated. Thus, the plaintiffs lack standing to pursue this motion for preliminary injunction. However, in an abundance of caution, the court will proceed to the merits of the plaintiffs' motion.

The decision to grant or deny a preliminary injunction "is within the sound discretion of the district court." *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002). This court may grant a preliminary injunction only if the plaintiffs demonstrate four prerequisites: (1) a substantial likelihood of success

on the merits; (2) a substantial threat irreparable injury will occur absent issuance of the injunction; (3) the threatened injury outweighs the potential damage the requested injunction may cause the non-moving parties; and (4) the injunction would not be adverse to the public interest. *Id.* at 1329. "In this Circuit, [a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to the four requisites." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998) (internal quotation marks and citations omitted).

## A.    Substantial Likelihood of Success on the Merits

The plaintiffs argue they have a substantial likelihood of success on the merits. (Doc. 178, pp. 13-14). In support of the plaintiffs' claim that the School Board unlawfully revoked LMA's charter contract, the plaintiffs provide the "Financial Affidavit of LMA C.E.O. Eddie Hundley" and the "Third Amended Complaint." (*Id.*). Mr. Hundley's financial affidavit states the School Board is responsible for LMA's financial troubles (a defense that was rejected in the DOAH order).[3] (*See* Doc. 178-1). Although the plaintiffs rely on the legal claims in their proposed third amended complaint, the operative complaint remains

---

[3] Conclusory self-serving affidavits cannot create a genuine issue for trial. *Lapenna v. Gov't Employees Ins. Co.*, No. 8:05-CV-904-T-24-MSS, 2007 WL 4199580, at *4 (M.D. Fla. Nov. 26, 2007) aff'd, 316 F. App'x 894 (11th Cir. 2009).

the second amended complaint.

The School Board responds the plaintiffs do not have a substantial likelihood of success on the merits because: (1) Plaintiffs Mr. Hundley, Ms. Scott, Ms. Phillips, and Ms. Enrisma lack standing to reinstate LMA's charter contract; (2) res judicata and the *Rooker-Feldman* doctrine bar Count I of the second amended complaint; (3) the plaintiffs fail to state a claim under 18 U.S.C. §§ 1981, 1983; and (4) the plaintiffs fail to state a claim under Title VII. (Doc. 198, pp. 11-25).

### 1.    Plaintiffs' Standing to Reinstate the Charter Contract

To proceed in federal court, the threshold question is whether the plaintiffs have standing. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975). To establish standing, the plaintiffs must meet three elements: (1) the plaintiffs must have suffered an "injury in fact"; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be "likely" rather than "speculative" that the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

To establish an "injury in fact," the plaintiffs must show that the defendants invaded a "legally protected interest." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 984 (11th Cir. 2005). Under Florida law, a third party is

an intended beneficiary of a contract between two other parties only if a "direct and primary object" of the contracting parties was to confer a benefit on the third party. *Id.* at 982. This intent must be specific and clearly expressed to endow the third-party beneficiary with a legally enforceable right. *Id.*

LMA and the School Board are parties to the charter contract. (Doc. 14-1, p. 54). The charter contract does not state an intent to benefit Mr. Hundley, Ms. Scott, Ms. Phillips, Ms. Ross, or Ms. Enrisma. (*See* Doc. 14-1). Because these individual plaintiffs do not have a legally protected interest in the charter contract, they may lack standing to request reinstatement of the charter. *See Wilbesan Charter School, Inc. v. Sch. Board of Hillsborough County, Florida*, 447 F. Supp. 2d 1292, 1301 (M.D. Fla. 2006) (holding that a charter school operator did not have standing to bring a claim that the defendant school board unconstitutionally terminated the school's charter contract because she was not a party to or intended third-party beneficiary to the charter). The challenge to the individual plaintiffs' standing undermines the plaintiffs' substantial likelihood of success on the merits.

## 2. Res Judicata and the *Rooker-Feldman* Doctrine

Count I of the plaintiffs' second amended complaint alleges "Unlawful Termination of Contract by School District." (Doc. 108, p. 25). The School Board

argues this claim is barred by the doctrine of res judicata and the *Rooker-Feldman* doctrine. (Doc. 198, pp. 14-17).

Res judicata bars a claim when: (1) there is a final judgment on the merits; (2) the decision is rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical; and (4) the same cause of action is involved in both cases. *Jaffree v. Wallace*, 837 F.2d 1461, 1466 (11th Cir. 1988). Similarly, the *Rooker-Feldman* doctrine bars a losing party from requesting, in substance, appellate review of a state court judgment in federal district court based on claims that the state court judgment violated the losing party's federal rights. *Brown v. R.J. Reynolds Tobacco Co.*, 611 F.3d 1324, 1330 (11th Cir. 2010); *see also Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009) (holding the *Rooker-Feldman* doctrine also bars federal claims raised in state court and claims inextricably intertwined with the state court judgment).

The School Board terminated LMA's charter contract under Section 1002.33(8)(c), Fla. Stat. (Doc. 108, p. 23, ¶ 40). The DOAH denied LMA's appeal and upheld the School Board's termination of the charter contract. *See Manatee Cnty. Sch. Bd.*, 2019 WL 4894993. The First District Court of Appeal affirmed the DOAH decision. *See Lincoln Mem'l Acad., Inc.*, 2020 WL 7766933. Both

decisions are final orders from courts of competent jurisdiction.[4] LMA and the School Board are parties to both the state and federal causes of action and the plaintiffs' second amended complaint relies on the same facts and issues addressed in state court—the termination of the charter contract.

The plaintiffs' claim against the School Board for unlawful termination of the charter contract may be barred by the doctrine of res judicata and the *Rooker-Feldman* doctrine, which undermines the plaintiffs' likelihood of success on the merits. Therefore, the plaintiffs do not have a substantial likelihood of success on the merits.

### 3.    Plaintiffs' Sections 1981 and 1983 Claims

In the second amended complaint, the plaintiffs allege violations of Section 1981(c) (Counts V, VII, IX-XI). Section 1981(c) creates a right but not a remedy for a constitutional violation. *Butts v. Cty. of Volusia*, 222 F.3d 891, 894 (11th Cir. 2000). Thus, the plaintiffs' section 1981 claims do not have a substantial likelihood of succeeding on the merits.

If the plaintiffs intended to request relief under Section 1983, "[a] local

---

[4] The First District Court of Appeal affirmed Judge Cohen's rulings and the plaintiffs did not request review of the affirmance by the Florida Supreme Court. Thus, the First District Court of Appeal's decision is a final state court judgment, which this court cannot overturn. *See Wilson v. Selma Water Works and Sewer Bd.*, 522 F. App'x 634, 635 (11th Cir. 2013) (per curiam).

government will be liable under § 1983 'when the execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury ....' " *Mandel v. Doe*, 888 F.2d 783, 791 (11th Cir. 1989) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). The plaintiffs fail to allege a policy or custom leading to a violation of their constitutional rights, which undermines the plaintiffs' likelihood of success on the merits for a claim stemming from Section 1983.[5] Therefore, the plaintiffs do not have a substantial likelihood of success on the merits.

### 4.    Plaintiffs' Title VII Claims

Title VII prohibits employers from failing or refusing to hire or discharging any individual or otherwise discriminating against any individual by his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2. Title VII's prohibitions are limited to discrimination as it relates to an employee's terms of employment or application for employment. *Llampallas*

---

[5] If the plaintiffs intend to bring claims under the Thirteenth Amendment, such claims are also unlikely to succeed because the Thirteenth Amendment does not provide for a private cause of action. *See Smith v. Orange Cty. Sch. Bd.*, No. 6:04-cv-1811-Orl-28DAB, 2006 WL 8439525, at *6 (M.D. Fla. Nov. 29, 2006).

*v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1242 (11th Cir. 1998).

In a Title VII action brought by an individual plaintiff, the plaintiff must be part of the class that will benefit from any injunctive relief awarded. *See Furcron v. Mail Centers Plus, LLC*, 774 F. App'x 592, 596 (11th Cir. 2019). The plaintiffs do not request reinstatement of their position or any benefit from reinstatement of the charter. *See Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1136 (11th Cir. 1984) (holding that injunctive relief was inappropriate when the plaintiff did not seek reinstatement and showed "no other way in which he would benefit personally"). Thus, the plaintiffs' fail to demonstrate the substantial likelihood of success on the merits on their Title VII claims.

*       *       *       *

The moving party's failure to demonstrate a "substantial likelihood of success on the merits" may defeat the party's claim, regardless of the party's ability to establish the other elements. *Church*, 30 F.3d at 1342; *see also Siegel v. Lepore*, 234 F.3d 1163, 1176 (11th Cir. 2000) ("the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper"). Because the plaintiffs failed to establish a substantial likelihood of success on the merits, a preliminary injunction is not

appropriate. Although the analysis could stop here, the court will review the other requisites for a preliminary injunction.

**B.    Threat of Irreparable Injury**

The plaintiffs contend they will suffer from irreparable injury because "money damages alone are not sufficient remedies" and the only way that the plaintiffs can be made whole is by preserving the status quo "for so long as this present lawsuit is pending." (*See* Doc. 178, pp. 15-16). This conclusory assertion fails to establish how and to what extent the plaintiffs will be irreparably injured absent the requested relief. *See Wilbesan Charter Sch.*, 447 F. Supp. 2d at 1307 ("Plaintiffs' other generalized allegations of irreparable harm, namely, that the school's reputation and that of [charter school operator] will be irreparably harmed and that students will be denied a free, appropriate public education absent an injunction, are not well demonstrated and are speculative at best."). Therefore, the plaintiffs cannot meet their burden on this prerequisite for a preliminary injunction.

**C.    Weight of Threatened Injury Against Potential Damage**

The plaintiffs' alleged injuries do not outweigh the damage that the requested injunctive relief would inflict on the School Board. Because the charter contract is terminated, all district school board property and

improvements automatically revert to the School Board's full ownership under Section 1002.33(8)(d), Fla. Stat. The requested injunctive relief would require the School Board and other defendants to act in contradiction to Florida law. Any injuries alleged by the plaintiffs are outweighed by the damage to the School Board and other defendants if required to maintain the status quo.

### D.   Public Interest

The requested preliminary injunction is adverse to public interest. As stated above, to reinstate the charter would require the School Board and ither defendants to act in contradiction to Florida law. The requested preliminary injunctive relief would also disrupt the students and staff and risk subjecting them to the same harms that led to LMA's charter termination. Thus, public interest supports denying the preliminary injunction.

## III.   CONCLUSION

The plaintiffs failed to establish a real and immediate threat of future injury for standing to obtain a preliminary injunction. The plaintiffs also failed to demonstrate a substantial likelihood of success on the merits; a substantial threat of irreparable injury absent the issuance of the injunction; that the threatened injury outweighs the potential damage the requested injunction may cause the defendants; and the injunction would not be adverse to the

public interest.

Accordingly, it is **RECOMMENDED** the plaintiffs' motion for preliminary injunction (Doc. 178) be **DENIED**.

**ENTERED** in Tampa, Florida April 21, 2021.

AMANDA ARNOLD SANSONE
United States Magistrate Judge

**NOTICE TO PARTIES**

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. A party's failure to object timely in accordance with 28 U.S.C. § 636(b)(1) waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions. 11th Cir. R. 3-1.